The Honorable, the Judges of the United States Court of Appeals for the Fourth Circuit. Oyez, oyez, oyez. All persons having any manner or form of business before the Honorable, the United States Court of Appeals for the Fourth Circuit, are admonished to draw nigh and give their attention, for the Court is now sitting. God save the United States and this Honorable Court. You may be seated. I want to welcome everyone to the Fourth Circuit Court of Appeals this morning. We have three cases. We have Judge Keenan with us remotely. Good morning, Judge Keenan. Good morning, Judge King, Judge Richardson. Good morning. And the, let's see here. The first case we have is U.S. v. Sueiro. I mispronounced that, probably. Mr. Bodner. And you may proceed. You can come forward right here, if you will. May it please the Court, I am Mark Bodner, representing Mr. Christopher Robert Sueiro. And frankly, Judge, I'm new to the case, so I don't know how to pronounce his name either. So I hope that's right. You didn't have the previous appeal? No, sir. Okay. I was appointed following the decision on remand from this Court. Okay. It's good to have you with us. Thank you, Judge. It's great to be here. I'd like to start off my argument by addressing the, what I believe to be, the more significant condition of supervised release that Mr. Sueiro is challenging, and that's the special condition of release number six, which is the lifetime bar on his being involved in employment or with minors or computers without prior approval of the Court. That's the modification. That is, the prior approval of the Court is the modification that Judge Alston made to the, what was the lifetime bar that this Court struck on appeal. And I have a number of reasons why I believe that the prior approval of the Court does not resolve the difficulty in preventing Mr. Sueiro's reentry into employment once he finally leaves prison. The Court may remember that he received a pretty stiff sentence of 20 years, and I understand his offenses were very serious. But the reasons are as follows. Number one, I believe that requiring prior court approval before he can obtain employment involving minors or computers is a greater restriction than is necessary to achieve the goals of 3553A that are designated to protect the public and provide for deterrence, et cetera. And the reasons, the most salient reason is that there are uncontested conditions of supervised release that seem to provide the protection that don't warrant having to proceed to court and somehow hope to get approval, which may or may not be granted by the Court. Those uncontested special conditions are numbers four, five, and 11, and I can describe them briefly as follows. Number four. So you're challenging four conditions? I'm challenging number six, which is the employment bar without prior. So you're tying number four, five, and 11 into six? Four, five, and 11 are uncontested. In other words, Mr. Sueiro was fine with them and did not challenge them. And number four requires him to have mental health and sex offender treatment. Number five requires that he submit to polygraph testing, should that be determined necessary by his treatment people or his probation officer. But most significant is condition number 11 requires him to have any computer device monitored by the probation office in accordance with the software that they ordinarily use. So the question is. . . Mr. Butler? Yes, Your Honor. Thank you, Your Honor. I have a question. Is number 11 in your view then less restrictive than number six? That's our. . . And if so, to what degree? If you explain your understanding of the differences between six and 11. Yes, Your Honor. Of course, six requires prior court approval, and we don't know what conditions Mr. Sueiro would have to meet to obtain prior court approval. What we do know is until he obtains it, he's barred from employment on the lifetime basis. I understand that the prior court approval is supposed to break through that lifetime bar, but it's unknown what may happen. Number two, he may or may not have counsel. He may or may not be capable of sustaining the expense of counsel to approach the court to obtain the approval. I believe that condition 11 is less restrictive because his computer devices are going to be monitored by the probation office, and it provides the protection that you would think the prior court approval is designed to provide to the public. That is, if he has employment involving computers or minors necessarily, there would be monitoring by the probation office, and they could see exactly what his use is. It's interesting that the government pointed out in its brief that there is no restriction other than the others that we challenged today limiting his recreational use of computers, but they, too, would be subject to the monitoring by the probation office. So that's the best answer I can give, Your Honor. Can you help me understand, with respect to number 11, why number 11 requires a work computer to have monitoring? It seems to me it doesn't require that at all, right? It seems to me the only thing it does is requires that Mr. Suero consent to it. But if I'm Bank of America or I'm Joe's LLC, and I don't want Uncle Sam monitoring my computer systems for whatever reason that might be, legitimate or not, it doesn't require that there actually be equipment put on the computer. If I run a business and I don't want Uncle Sam monitoring everything that I'm doing, which is what the software would effectively do, I could say as a business, no, I'm not consenting. It doesn't require it. So why doesn't it just naturally make sense that both of these fit together? They're not overlapping at all. They require Mr. Suero to consent, but they require the court to provide permission only when the company is willing to install the software. So if the company doesn't install the software, the company is non-cooperative, then that's precisely the scenario which Mr. Suero, who engaged in lots of workplace misconduct to begin with, that's how we got here to start with, would be prohibited from working there. They don't seem to overlap to me. They seem actually to just fit together like two pieces of a puzzle. What am I missing here? What in number 11 requires a business to let Uncle Sam monitor their computer system? Your Honor's point is very well taken. I think that that's a substantial point. I would simply suggest to the court this, that that being the case, he wouldn't be able to sustain that employment because obviously the employer who has these concerns is going to say, well, we're not going to allow your use of software for this. So it seems to me it would shift the burden to the government to show why he should have this or that employment or not have this or that employment. No, the point is, is that, you know, the judgment was made. Judge Alston, who knows a lot more about this case than I ever will, made the judgment that it's too risky to have him using an unmonitored work computer. And so if he can't find a job that allows monitored work computer, he needs to find one that doesn't have computers. The same thing with respect to children, right? If he can't find a job that doesn't require interaction with children, then, yes, Judge Alston is making the judgment that that small category of jobs are unavailable to him, right? So too are the small category of jobs. Most businesses, I'm sure, would be perfectly happy to have, you know, child porn monitoring software. Many businesses, I assume, already have it, right? But if he was working at, wanted to work at one that did not permit monitoring, that's precisely the scenario where we don't want him to have that job. Well, I don't disagree with what Your Honor has just said. All I would suggest is those would be jobs that he couldn't have because the employer would be unwilling to submit to the condition that the court has imposed. Do you agree? I mean, you do agree that Judge Alston can say, take the first example I gave, you may not have a job that requires interaction with small children. Is that a permissible supervised release restriction? I would think that would be permissible, yes. Right. I mean, that's sort of like an obvious example. Yes, sir. I think we've suggested in various places, you don't even have to explain that one. That's just like so obvious that it's clear. Well, that tells us that we can have restrictions that limit employment in some way. You can't bar all employment. I get that. But this isn't barring all employment. This is just saying, listen, if we've got an employer who refuses to have the computer monitored for whatever reason, that's not a job he can have. In the same way the kindergarten teacher is not a job that he can have. But as Your Honor also pointed out, there are a whole range of jobs that he could have with the monitoring. And the prior court approval condition seems to preclude that until he comes to the court and says, this is what I have. I have an employer who will allow my computer to be monitored. Right. And if the judge doesn't approve that, if Judge Alston or whoever it will be at that point in time when he gets out of prison and has taken Judge Alston's place, he has an ability to challenge that. If that judge unreasonably withholds that, he can challenge that. That's a challenge that's available to him. We certainly are not going to presume that that judge in the future is going to be an unreasonable human being who refuses to allow him to work in any job. Well, two things about that. One, he might encounter a judge who, looking at his record, says or has in the back of his or her mind, this really is a very unappealing applicant, number one. But I think more to the point, it's a greater restriction that is necessary to put him in that position than to have the monitoring, which is going to show the division between those jobs which he can have and those jobs. Do you think that Judge Alston could have ordered all employers to accept monitoring? Oh, no, not at all. So then the monitoring doesn't help, right, because what it's telling us is that he has to consent to it, but the employer does not. No, I think it does help. I respectfully disagree with Your Honor to this degree, that the monitoring opens up a range of jobs that he can have and that is a greater restriction to say come to court before you can have the job than to say these are conditions that adequately protect the public because there are going to be some employers who will not have him with the condition. And that's where he can't go, but that's not a danger to the public if he doesn't have that job. Just so I understand, if we were to strike out condition number six, right, so that that was no longer a condition. Yes, sir. And he went to a company, Joe's LLC, and they employed him and he told Joe's LLC I consent to monitoring and the company says no, I'm not going to have any monitoring. If we've eliminated number six, he can just go to work there and he can use that computer unmonitored without any restriction. That presumes that the probation officer does not know what he's up to because presumably why would it matter? He's not violating any condition. He can use an unmonitored computer at work because you've told us we've got to get rid of number six. And number 11 does not require monitoring. It just requires his consent to monitor. I agree with that, but I believe it's a standard condition that is not an issue before the court that he's required to notify his employers of his record. Right, but I'm assuming that Joe allows him to work there and Joe is happy for him to use a computer that is totally unmonitored and he is absolutely permitted to do that were we to strike number six. No, because uncontested condition number 11 requires that he be monitored. Okay, help me understand and then I'll stop. I'll let my colleagues go, but why does number 11 require that? Because it doesn't say it. It just says he has to consent to it, but you can't put a monitoring on Joe's LLC, their computer, without their consent, and the judge didn't order every known employer in the future to consent to Uncle Sam monitoring their stuff. I just think you're misreading number 11. I could be, Your Honor, but the way I perceive it is this, that he's required to notify the employer, number one, that this is my history. He has a probation officer who's going to want and have to know how he's employed, how he's spending his time, and also the probation officer is going to want to know that the equipment, the monitoring software is in place if he has access either to the minors. Well, that condition's been struck. If there's a computer there, the probation officer is going to know that he has access to a computer and use of a computer, and therefore by the rule, number 11, which is uncontested, he has to consent to the monitoring, and if he doesn't, I suppose the probation officer can say to him, you can't have that job, and if he insists on going forward, Mr. P.O., then I suppose the probation officer can go to court and say, this is a problem, Your Honor. So I think that there is adequate protection. You agree that it would not violate Condition 11 for him to consent but for his employer to refuse monitoring. That's not a violation of Condition 11. No, I agree with you, Your Honor. And in that world, he shows up to work and he has an unmonitored computer and he can use it, and he has not violated any condition other than number 6. I think that number 11 is designed to foreclose that possibility. It may have hoped to foreclose that possibility, but it doesn't by its very terms, right? I guess in the universe of possibilities, Your Honor, it is possible. It's hard for me to imagine that a probation officer with a fellow who has this history is not going to be watching him closely as to where he is and what he has access to. I don't know. That may not be a satisfactory answer for Your Honor, but that's the best I can come up with given what is available. I do believe that it's less restrictive. Let me move on to my next point and let's look where it is other. How old is this fellow? He is in his 30s, I believe. I don't know exactly, Your Honor. I just looked it up the other day on the BOP website. I think he's 43. Forty-three. And he's had a jury trial? Yes. For Judge Alston? Yes. And he got 20 years? Yes. How much has he served? I looked up his release date and I believe it's 20. Give me a moment, Your Honor. I thought I wrote it down. It's 2030-something. So he's at least, I believe he's 12 years from his release date now. None of these things kick in until he's released? Your Honor is correct, yes. And we review all this for abuse of discretion? Yes. Judge Keenan? No further questions. Thank you. Thank you very much, sir. I'm sorry. You saved some time. You're in the red numbers. Oh, I apologize. I didn't even realize that. Is this your first time arguing down here? No, sir. But I know the lights and I wasn't looking, so I apologize. No, don't you apologize. We really appreciate what you're doing. But you've got some more time reserved. Can I raise a main point on rebuttal? During my rebuttal time. Well, you go ahead. If you've got a main point. I would take away the rebuttal time now just to make this other point. Well, sure. I should have done that. I didn't think it would go this quickly, frankly. Next time I'll be more careful in making the adjustment. I also argue that the judge, Judge Alston, for all of his wisdom, did not address the argument by the government, because they changed their position before they came here, that these other uncontested conditions, 4, 5, and 11, would be sufficient. It was the government's position that there was no need for a lifetime bar because you had these protections. So the government conceded your position, you say? I'm sorry, Your Honor. The government conceded your position? No, it was their position coming out of the gate. Their position? And Mr. Suero's counsel on remand said, we agree with the government. So both sides agreed, but Judge Alston didn't agree with you? Judge Alston did not agree, and when we got to this point, I learned when I received the government's response that they no longer agreed with their earlier position. And now here they're supporting Judge Alston. Yes, Your Honor. And you're saying that that abuse of discretion review is not broad enough to permit Judge Alston to disagree with both sides? I think my argument is, I'm sure my argument is, that Judge Alston didn't address the argument that I just made before the court, that uncontested special conditions 4, 5, and 11 were satisfying to the government, that that was sufficient protection, that there didn't need to be a lifetime bar. You're not arguing that the district court's discretion in imposing a sentence, whether supervised release condition or otherwise, is limited to choosing between the government and the defense's arguments, right?  It's not like baseball arbitration, right? Correct. Where you get two options and you've got to pick which one. The sort of point of a district court judge is that he's got pretty broad discretion to fashion the sentence that he thinks is appropriate. You're absolutely right. And that's true on the number of years and that's true on the conditions, too. You are absolutely correct, Your Honor. And my position is— Is it over? Yes, Your Honor. Oh, I'm sorry. I didn't mean to interrupt. I didn't really have to. I can wrap it up in— You go right ahead, Judge Keenum. Okay. Mike, it seems to me that you're left arguing the position, then, that the court has to address the non-frivolous arguments of the government. And we've never said that, have we? We've said that as a procedural matter, the court has to address the non-frivolous arguments of the defendant regarding supervised release. So aren't you asking us to go a step further and to say the court has to address the non-frivolous arguments of the government? You've never said that in a case in which supervised release was at issue. This court has ruled that the government— that the court is required to address non-frivolous arguments and that it is an abuse of discretion not to address them, and it is reversible. And we cited two cases in my supplemental brief, which the government has probably correctly criticized— not correctly, but justly criticized— that I didn't raise this argument in our opening brief. In fact, I raised the argument in the opening brief. I didn't cite the authority until I got to the supplemental brief. But there are two cases, Perez, Paz, and Patterson, that are in the supplemental brief that both make the point I just advised Your Honor of. So you're asking us then to make this point with regard to supervised release? I'm asking you to make that additional step, yes, Your Honor. Thank you all for your patience at this point. And you saved some time, as I said. Ms. Bechara? Good morning, and may it please the court. Jacqueline Bechara for the United States. Judge King, I can first address two factual questions that you had for my colleague. The defendant at this time is 44 years old. That's according to his birth date at JA-96. And his release date projected is May 27th of 2037. 2037. That's right. Thank you. I can start by talking about, I guess, the claim of procedural error with respect to the district court's failure to address the government's non-frivolous arguments. As Judge Keenan correctly recognized, this court has never held that to be required on a defendant's appeal, challenging failure to address the government's arguments. As I said in our supplemental response brief, the defendant waived this argument by failing to assert it either in his opening brief or in his reply brief. Further, both of the cases that he cited in his supplemental opening brief do not stand for this proposition. They both involve situations where the defendant claimed that the district court failed to address the defendant's non-frivolous arguments in mitigation at sentencing, not that this court held that the district court erred by failing to address the government's arguments on the defendant's appeal. Can I ask the premise question? Do you take the government's argument or the government's statements below about 4, 5, and 11 to be like an argument that imposing Condition 6 would be improper? I mean, maybe you could consider them that way, but they don't read that way. They don't read to me like an argument that imposing Condition 6 would be improper. Instead, it seems to be like an explanation of the government's decision to not seek Condition 6, for example. But it seems a little odd, even if we were to extend it to the government's arguments, to take this and suggest that this was an argument of what the court was required to do. Yes, this is an important clarification point. Judge Richardson, this is not an instance where we affirmatively represented to the district court that it would be an abuse of the court's discretion to impose these conditions or that there was no record support for these conditions. What we said, the language we used, was that the district court should clarify that the unchallenged conditions, 4, 5, and 11, could be interpreted to expand to cover the challenged conditions. That was simply one possible solution to this problem. But as you also recognized during my friend's opening argument, Judge Richardson, when it comes to reviewing sentences, there is a range of possible sentencing outcomes. It's not a binary selection. And simply because the district court rejected the government's recommendation, that does not mean that the district court abused its broad discretion in crafting conditions of supervised release. Do you think that 6 is covered by 4, 5, and 11? I understand that's the procedural point, but just as a substantive matter, do you think that they do? And if not, why? No, they are not coterminous, because as you correctly recognize, it only applies to the defendant. It requires the defendant to consent to monitoring. But as you observed, there is no restriction imposed on a potential future employer or future volunteer opportunity, and that is a significant area of risk. And I would just point the court to the court's recent decision in Ellis 2. There were actually similar parallel conditions to what we have here, right? There was both the prior approval requirement for Internet-capable devices outside of employment context, and there was also a monitoring requirement. And the court still upheld the prior approval requirement and said that it was not more restrictive than necessary under 3583d2, notwithstanding the existent monitoring requirement. Instead, as Your Honor suggested, they're sort of working in tandem to ensure that any computer that he is going to have access to is properly monitored to avoid recidivism, essentially. I would also just reiterate my friend characterized this as a total ban. It's not. We know that from this court's decisions in Ellis 2 and Comer and Hamilton, interpreting similar restrictions with prior approval requirements. I can also just briefly address that there is a suggestion that perhaps Judge Alston or whoever might be presiding in 2037 would not properly apply or give approval to Swero. And I just want to push back on that, the suggestion that the district court might act in bad faith or sort of arbitrarily, there's just no support for that in the record. Instead, we know that the district court gave Swero the benefit of the doubt at every turn, especially at sentencing. Notwithstanding that the district court observed some pretty unruly and disruptive conduct throughout these proceedings, it declined to apply the obstruction enhancement and it also sentenced the defendant below the guidelines range. And we know that the district court was particularly attuned to this court's specific concerns in the prior case, Swero 2, because at JA 78, the district court quoted directly from this court's opinion, noting the overriding concern about rendering Mr. Swero essentially unemployable in our modern world. That was the language from this court's opinion. If we're going to present anything about what's going to happen in 2037, it would be that the court would act properly. Exactly, and this court would be required to follow this court, I'm sorry, the importance of a defendant's ability to engage in employment and volunteer services so that he can be properly rehabilitated once released to supervision. In fact, that is in everyone's interest, including in the district court's interest, to make sure that the defendant can successfully reintegrate into society. Did you try the case? I did not, Your Honor. And I would just note that's sort of an additional atmosphere here. Did you argue the first appeal? I did not argue the first appeal or the second appeal. And I would just note for you, there's been sort of a rotating cast of characters, both on the government and on the defense side. The only constant in this case has been Judge Alston, who has presided from the pretrial proceedings at trial and at sentencing. He knows this case better than all of us in this room. And so, well, maybe not better than you, Judge Richards. There's no doubt about that. Okay. Let's be very clear. I said that in the opening. He certainly will know more about this than we ever will. Right. So on this record, there's simply no basis to conclude that he abused his discretion. And everything is governed by that abuse of discretion. Yes, Your Honor. Review principle. Do you all agree with that? On that, that's something you've got the lawyers to agree on. Yes. That's good. Judge Keenan. No questions. Thank you. Thank you. We ask that you affirm. We appreciate very much your work as well. Yes. Mr. Bonner. Thank you, Your Honor. I agree with counsel that we don't know and we shouldn't presume, and I don't presume that there will be a negative view towards my client's approach to the court to request a relief that we're asking here today. It just puts the burden on him. And my whole argument, if I wasn't clear to start with, is that there are less restrictive alternatives than putting him in that position. Let me note for the court that the record of this case, Judge Halston candidly, in his memorandum of opinion and order, noted that there was nothing in the case, in the record, that showed that he had any contact with minors. That's at Joint Appendix 84. There was no evidence in the record that he was addicted to pornography. That's Joint Appendix 79. And Judge Halston did say that it appeared that he was progressing to distribution of pornography, but there was nothing in the record and counsel for the government. The government certainly did not point out anything in the record that would show that he was in distributing any of these things. That's Joint Appendix 84. Relative to the government's argument that my client waived his right, his argument as to the fact that Judge Halston did not consider the alternatives of uncontested special conditions of supervised release 4, 5, and 11. I don't agree that we waived that. At several points in my opening brief, we made the argument, and that's at pages 63 and 64, where we agreed with the government's position in presenting this, saying we don't see a need for this lifetime bar. And their argument was made at pages 59 and 60 of the Joint Appendix. So in any event, I made this argument in several spots in the opening brief. I thought I had the page numbers, and I apologize for that. In the legal argument was set forth, that is, the legal authority, Judge Keenan points out, I'm asking the additional step to be made, that is that it's an abuse of discretion not to address non-frivolous arguments that appears in our supplemental brief. So the government has had a full opportunity to address this, argue, say why they believe that it's a waiver. I just don't want this court to conclude that it is a waiver because it was advanced out front where everybody could see it and address it, and this court can certainly rule on it. Your Honors, I thank you for your consideration. Unless you have any other questions, we respectfully ask you to reverse the judgment. Let me say this one other thing. I'm sorry. I just wanted to say that all the arguments I just advanced apply equally to the other special conditions of release that we challenged in the briefs, and those were the ones relating to Mr. Suero's access to adult pornography protected by the Fourth Amendment. We believe the same considerations I argued to you here show why that is also an overbroad restriction relative to his use of computer games that would be connected to the Internet. Having said all that, thank you for your patience. You've been very considerate, and your questions were quite challenging. I ask that you reverse, respectfully. Thank you. Thank you, Mr. Bodner. We really say that sincerely. We couldn't do our job without lawyers like you that take these things on on a court-appointed basis. We appreciate you. Judge Richardson and I will come down and recounsel, and then we'll go to the next case. Thank you.
judges: Robert B. King, Julius N. Richardson, Barbara Milano Keenan